FILED

MAR 09 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAR − 9 2023

UNITED STATES OF AMERICA

v.

ZISHAN ALVI

23 C R 142

Violations: Title 18, United States Code,
Sections 641 and 1343

**UNDER SEAL**

COUNT ONE

JUDGE MALDONADO
MAGISTRATE JUDGE HARJANI

The SPECIAL JULY 2021 GRAND JURY charges:

1. At times material to this Indictment:

COVID-19 Outbreak and Testing

a. In or around December 2019, severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), the virus that causes coronavirus disease ("COVID-19"), began to spread throughout the world.

b. Various tests to detect for SARS-CoV-2 were developed, including a type of testing known as polymerase chain reaction tests ("PCR tests"). PCR tests required the use of an adequate amount of certain testing materials, including reagents, to render reliable results.

c. Individuals sought testing for COVID-19 for a variety of reasons, including for diagnosis when suffering from COVID-19 symptoms, and in advance of engaging in certain activities, like airplane travel and planned contact with others who, due to age or health conditions, were at higher risk of death or severe illness from COVID-19. Some individuals who were tested used their test results to help

1

determine whether or not to engage in future activities, such as travel or contact with others. Individuals often needed their test results within a short period of time before engaging in such activities.

### The HRSA Uninsured Program

d.      In or around March and April 2020, multiple federal laws were enacted that provided funding for COVID-19 testing for individuals for whom COVID-19 testing was not covered by health insurance, including the Families First Coronavirus Response Act, the Coronavirus Aid, Relief, and Economic Security Act, and the Paycheck Protection Program and Health Care Enhancement Act.

e.      The Health Resources and Services Administration ("HRSA") was an agency of the U.S. Department of Health and Human Services that oversaw and administered the funds appropriated through federal legislation to cover the costs of COVID-19 testing for individuals without health insurance coverage ("the HRSA Uninsured Program").

f.      To participate in the HRSA Uninsured Program and receive reimbursement for COVID-19 testing, a provider had to attest to compliance with the Terms and Conditions for Participation in the HRSA Uninsured Program ("HRSA Terms and Conditions"). The HRSA Terms and Conditions required the provider to submit truthful information when it submitted claims for reimbursement for COVID-19 testing, and to certify that, among other things: the provider had administered a diagnostic test for COVID-19; the provider would not be reimbursed for the test from

2

another source; and all information provided in the claim was true, accurate, and complete, to the best of the provider's knowledge. HRSA required claim information to include the individual's name and date of birth; the testing provided; the location where the testing was provided; and the amount to be charged to HRSA for each test. HRSA paid for COVID-19 tests for which a representation had been made that the testing was done pursuant to the HRSA Terms and Conditions, and that the information provided about the test and the individual being tested was accurate.

<u>Laboratory A and ZISHAN ALVI</u>

g.      Defendant ZISHAN ALVI co-owned and operated Laboratory A, a laboratory located in Chicago, Illinois. ALVI maintained an account at Financial Institution A ending in 3933, for which ALVI had signatory authority ("Personal Account").

h.      Laboratory A purported to perform testing to detect for SARS-CoV-2, and offered two types of COVID-19 testing: PCR tests and antigen tests that delivered results within approximately 15 minutes ("rapid tests"). Laboratory A also offered a service where individuals and companies could pay a fee to receive COVID-19 PCR test results in an expedited fashion.

i.      Laboratory A maintained an account at Financial Institution B ending in 2616, for which ALVI had signatory authority ("Laboratory A Account").

3

j.      Laboratory A enrolled in the HRSA Uninsured Program in or around December 2020, and contracted with Biller A to submit claims, via interstate wire transmissions, to the HRSA Uninsured Program on its behalf.

k.      Consultant A was a consultant for Laboratory A who designed software for Laboratory A that compiled billing-related information associated with test specimens, interpreted PCR test results, and generated e-mails with test results to individuals whose specimens purportedly had been tested. Once test results were released to the individual, Laboratory A, through Biller A, submitted claims to HRSA and other funding sources for the tests.

l.      Most of the test specimens provided to Laboratory A for PCR testing were delivered by test collectors who received remuneration from Laboratory A for delivering large amounts of test specimens to Laboratory A. Some individuals went directly to Laboratory A to provide their test specimens ("walk-in customers"). Walk-in customers often sought PCR testing in combination with rapid tests.

m.      When HRSA approved a claim seeking reimbursement for COVID-19 testing, funds from the HRSA Uninsured Program were electronically transmitted to the Laboratory A Account.

n.      Laboratory A obtained over $83 million from the HRSA Uninsured Program as payment for COVID-19 tests purportedly performed by Laboratory A.

4

2.     Beginning in or around February 2021, and continuing through in or around February 2022, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, along with others, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3.     It was part of the scheme that ALVI caused Laboratory A to obtain funds from the HRSA Uninsured Program by submitting, and causing to be submitted, fraudulent claims to HRSA. The claims fraudulently sought reimbursement for purported tests for COVID-19 when ALVI knew that (a) Laboratory A had not performed a test for COVID-19; (b) Laboratory A had modified a test for COVID-19 such that the results were unreliable; and (c) Laboratory A already had collected payment from the individuals who purportedly had been tested.

4.     It was further part of the scheme that ALVI caused purported negative test results to be released to individuals for whom a fee for expedited test results had been paid to Laboratory A, when ALVI knew that a COVID-19 test had not been performed on the specimens.

5.     It was further part of the scheme that ALVI paid test collectors to deliver test specimens gathered in the Chicago area and elsewhere to Laboratory A,

including instances when the test collectors delivered tens of thousands of specimens at a time to Laboratory A for processing, so that ALVI could obtain additional funds from HRSA and other sources for purportedly performing COVID-19 tests. Most specimens that Laboratory A received came from these test collectors whom Laboratory A paid.

<u>ALVI Caused Claims to be Submitted to HRSA</u>
<u>When No Testing Was Performed</u>

6.     It was further part of the scheme that ALVI knowingly caused Laboratory A to submit claims to HRSA for reimbursement for COVID-19 tests purportedly performed on test specimens that Laboratory A had received, when ALVI knew that no test had been performed on the specimens.

7.     It was further part of the scheme that ALVI directed Laboratory A employees to falsely indicate in Laboratory A's records that COVID-19 tests had been performed, when ALVI knew that the test specimens had been discarded at ALVI's direction and had not been tested.

8.     It was further part of the scheme that, in order to conceal the fact that tests were not performed, ALVI instructed Laboratory A employees to release purported negative COVID-19 test results to individuals, when ALVI knew that no tests were performed.

9.     It was further part of the scheme that, in order to conceal the fact that tests were not performed, Laboratory A did not release positive COVID-19 results on

specimens where tests were eventually performed, because a purported negative result had already been released.

### ALVI Caused the PCR Test Method to be Altered to Use Less Testing Materials, Rendering the Test Results Unreliable

10. It was further part of the scheme that, to reduce costs and increase Laboratory A's profits, ALVI directed Laboratory A employees to alter Laboratory A's PCR testing method by using less of the materials necessary to process the PCR test, including the reagents, knowing that this made the test results unreliable.

11. It was further part of the scheme that ALVI caused Laboratory A to submit fraudulent claims for reimbursement to HRSA for purported COVID-19 tests performed using this unreliable method.

12. It was further part of the scheme that, in order to conceal the unreliable test results, ALVI caused Laboratory A to deliver purported negative test results to individuals, when ALVI knew that the altered PCR test had yielded results that were inconclusive and not reliable.

13. It was further part of the scheme that ALVI directed Laboratory A staff to conceal from its laboratory directors the modifications to Laboratory A's PCR testing method, so that Laboratory A could continue to fraudulently claim reimbursement from HRSA for performing the altered PCR tests.

<u>ALVI Caused Claims to be Submitted to HRSA Seeking Payment</u>
<u>For Testing Walk-In Customers Who Had Already Paid for Their Tests</u>

14.     It was further part of the scheme that ALVI instructed Laboratory A staff to collect payment from walk-in customers for rapid tests and then bill HRSA for those same tests. As a result, Laboratory A fraudulently sought reimbursement from HRSA for rapid tests for which it already had been paid.

<u>Proceeds from the Fraudulent COVID-19 Billing to HRSA</u>

15.     It was further part of the scheme that ALVI deposited, and caused to be deposited, the fraudulently obtained funds from HRSA for COVID-19 tests that were not provided as billed, into the Laboratory A Account.

16.     It was further part of the scheme that ALVI transferred fraudulently obtained HRSA funds from the Laboratory A Account to the Personal Account, and used the funds in part to make personal expenditures, including for vehicle purchases and investments in stocks and cryptocurrency.

17.     It was further part of the scheme that ALVI misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purpose, and acts done in furtherance of the scheme.

18.     On or about July 9, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate

8

commerce certain writings, signs, and signals, namely, a claim for a rapid test for Individual J.T. performed on June 17, 2021, for which Laboratory A already had received reimbursement from Individual J.T., which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JULY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 17 of Count One are incorporated here.

2.     On or about July 27, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual N.A. performed on July 25, 2021, that was not performed as billed and for which the test result was released as negative to Individual N.A. when it was in fact positive, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

10

## COUNT THREE

The SPECIAL JULY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 17 of Count One are incorporated here.

2.     On or about August 19, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual C.R. performed on August 7, 2021, that was not performed as billed and for which the test result was released to Individual C.R. as negative when it was in fact positive, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JULY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 17 of Count One are incorporated here.

2.      On or about August 25, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a rapid test for Individual T.A. performed on August 13, 2021, for which Laboratory A already had received reimbursement from Individual T.A., which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL JULY 2021 GRAND JURY further charges:

1.　　　Paragraphs 1 through 17 of Count One are incorporated here.

2.　　　On or about September 3, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual L.M. performed on August 22, 2021, for which the test result was released to Individual L.M. as negative when it was in fact inconclusive, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL JULY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 17 of Count One are incorporated here.

2.      On or about September 24, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual J.F. performed on September 9, 2021, for which the test result was released as negative to Individual J.F. when it was in fact inconclusive, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

The SPECIAL JULY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 17 of Count One are incorporated here.

2.     On or about December 24, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual D.C. performed on December 16, 2021, that was not performed as billed, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT EIGHT

The SPECIAL JULY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 17 of Count One are incorporated here.

2.     On or about December 27, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual A.D. performed on December 20, 2021, for which the test result was released as negative to Individual A.D. when it was in fact inconclusive, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

16

## COUNT NINE

The SPECIAL JULY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 17 of Count One are incorporated here.

2.      On or about January 3, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual R.S. performed on December 23, 2021, that was not performed as billed, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

17

## COUNT TEN

The SPECIAL JULY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 17 of Count One are incorporated here.

2.     On or about January 4, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, for the purpose of executing the above-described scheme, did knowingly cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a claim for a purported PCR test for Individual K.S. performed on December 24, 2021, that was not performed as billed, which claim was processed through HRSA servers located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT ELEVEN

1.      Paragraph 1 of Count One is incorporated here.

2.      From in or around November 2021 through January 2022, Laboratory A received an influx of specimens to be tested for COVID-19, in part due to a surge in COVID-19 cases caused by a COVID-19 variant known as Omicron. Laboratory A could not store or process the volume of specimens that it received during this time period.   To clear the backlog, ALVI instructed Laboratory A staff to dispose of specimens that had not yet been tested.

3.      In or around December 2021 and January 2022, ALVI caused Laboratory A to seek reimbursement from HRSA for specimens that were never tested because they had been thrown away at ALVI's instruction.  As a result, HRSA paid for COVID-19 tests that Laboratory A never tested.

4.      On or about January 24, 2022, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ZISHAN ALVI,

defendant herein, did steal, purloin, and knowingly convert to his own use and the use of Laboratory A money of the United States, namely, in excess of $1,000 in funds administered by HRSA for COVID-19 tests, which funds Laboratory A was not entitled to receive;

In violation of Title 18, United States Code, Section 641.

19

## FORFEITURE ALLEGATION

The SPECIAL JULY 2021 GRAND JURY alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Sections 641 and 1343, as set forth in this Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes, but is not limited to:

a.     A personal monetary judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343, estimated to be approximately $83,578,387.89.

b.     The following specific property:

i.    A 2021 Mercedes-Benz GLB250W4 bearing VIN W1N4M4HB2MW138458;

ii.   A 2021 Land Rover Range Rover HSE bearing VIN SALGS2RU1MA455040;

iii.  A 2021 Lamborghini Urus bearing VIN ZPBUA1ZL5MLA12076;

iv.   A 2021 Bentley bearing VIN SJAAM2ZV4MC037190;

v.    A 2022 Tesla X bearing VIN 7SAXCBE66NF331823;

vi.   Approximately $6,825,089 in ZISHAN ALVI's personal bank account ending in 3933 that was seized on or about February 23, 2022;

vii.  Approximately $810,000 in an E*Trade account ending in 5843;

20

       viii.   Approximately $500,000 in a Fidelity Investments account ending in 6785; and

       ix.   Approximately $245,814 in a Coinbase account associated with Coinbase User ID 5a2db8a7f9650a00c3d0064e.

3.    If any of the property described above, as a result of any act or omission by the defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

_____

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

21